WALKER *v.* QUINCY, M. & P. RY. Co.[1]

(*Circuit Court, E. D. Missouri.*   October 1, 1886.)

RAILROADS—MORTGAGES—FORECLOSURE—COMPENSATION OF TRUSTEES AND ATTORNEYS.

    Fifteen hundred dollars allowed to New York trustees, and $5,000 to those residing in Quincy, Illinois, $5,000 to New York counsel, $5,000 to counsel in St. Louis, and $2,000 to counsel in St. Joseph.

In Equity.

*Motter & Judson*, for complainant.

*Hough, Overall & Judson* and *Phillips & Stewart*, for defendant.

BREWER, J., (*orally.*)   In the foreclosure case of *Walker* v. *Quincy, M. & P. Ry. Co.*, the decree, which was signed early last spring, among other things, directed the master to inquire as to the proper compensation for counsel and the trustees.   Subsequently a sale was had under that decree, and confirmed.   In pursuance of that direction in the decree, the master, in May, commenced a hearing as to the question of compensation.   That hearing was continued from time to time, from the eighth of May to late in June, and on the twenty-sixth of June the master filed his report, which was confirmed on the same day.   The report allowed to counsel in New York $5,000, to counsel in this city $5,000, and $2,000 to counsel in St. Joseph, this state.   It allowed $1,500 to the trustee residing in New York, and $5,000 to the trustee residing in Quincy, Illinois.

The committee of the bondholders, which was also the purchasing committee, after the confirmation of the report, and after the term had adjourned, though within five or six days thereafter, filed exceptions, and a motion to set aside that order of confirmation, and asked that the matter be referred back to the master, with leave to them to be heard as to the propriety of the allowances to the trustee at Quincy, to counsel in this city, and to counsel in St. Joseph.   One of the grounds of their application is that there were some negotiations, prior thereto, between the various counsel for a settlement of the amount of their fees by Gen. Swayne.   These negotiations in fact never resulted in a definite agreement, because the consent of all the parties interested could not be obtained.   The matter was, however, informally at least, referred to Gen. Swayne, and he allowed to the

[1] Edited by Benj. F. Rex, Esq., of the St. Louis bar.

New York counsel $5,000. To the counsel here he allowed only $3,000, and to counsel at St. Joseph $1,000. They also insist that the allowances in fact made to the last-named counsel, as well as that to the resident trustee, are excessive.

I have looked the testimony over, and am satisfied that the allowance to the trustee at Quincy was entirely justified. True, he was allowed more than the trustee in New York; but the road was taken out of the possession of the receivers of the Wabash, and for nine months thereafter was in the custody of these trustees. During this time he was the real manager, reporting monthly to his New York associate, who simply made examination of the reports. The active charge of the business was in the hands of this resident trustee; and, considering the length of the road, (134 miles,) the time of control, and the amount of business, (some $160,000 and odd dollars,) I think there can be no question but what the allowance was eminently proper.

So far as the allowance to the counsel here is concerned, it is sufficient to say that this was not an ordinary foreclosure. A bill was originally brought by Mr. Walker, one of the bondholders, through counsel in St. Joseph, while the road was in possession of the receivers of the Wabash, and proceedings were had for the purpose of extricating that road from the possession of the receivers. It was accomplished, and the road was turned over to the trustees. Subsequently the trustees filed a cross-bill, setting up the mortgage. There was a second mortgage, and thereafter defenses were interposed by the road, and by the second mortgage bondholders, so that there was not an ordinary foreclosure going through by simple default. There was a litigated suit, involving necessarily, by virtue of the relations of the road to the Wabash system, some questions of considerable importance. I have read the testimony very carefully as to the services rendered, and I cannot think the master erred in his allowance.

Further, all parties having counsel in this court appeared before the master. Gen. Chamberlain, the New York counsel, gave his testimony as to the value of his services, as did also the other counsel, and all parties were represented before the master, and were aware of the proceedings, which were pending before him for six or seven weeks; and while, perhaps, it is true that the report ought not to have been confirmed so immediately upon its being filed, yet, under the circumstances, the irregularity is not such that it ought to be set aside.

The motion will be overruled.